COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-308-CV

JEAN PIERRE APPELLANT

V.

CAROL TILLEY, DESIGN WEST, INC., APPELLEES

D.R. HORTON, INC. D/B/A D.R. HORTON 

CUSTOM HOMES, AND 

D.R. HORTON-TEXAS, LTD.

------------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Jean Pierre appeals from a judgment on a jury verdict based on statutory and common law fraud in favor of Carol Tilley and Design West, Inc. (“Tilley”) and D. R. Horton, Inc. d/b/a D. R. Horton Custom Homes and D. R. Horton—Texas, Ltd. (“Horton”).  We affirm.

Background

Pierre owns a shopping center in Dalworthington Gardens known as Campo Verde Square.  The property is managed by Scott Evans.  Horton is a homebuilder, and Tilley is an interior decorator employed by Horton to furnish its model homes.  In August 2003, Tilley sought storage space for furniture displayed in Horton’s model homes.  She saw a sign advertising space at Campo Verde Square and set up a meeting to inspect it. 

Tilley and Jody Delgado, a Horton marketing director who worked with Tilley, met with Pierre in early August 2003 and inspected the storage space. Both Tilley and Delgado testified that they saw a puddle of water on the floor and damaged and missing ceiling tiles.  Weather records reported that Meacham Airport, about twenty miles away, recorded .19 inches of rain the day before. Pierre testified that there was no water on the floor at the time of the meeting. 

Tilley told Pierre she needed a space by August 19 to store upholstered furniture.  Tilley and Delgado testified that they told Pierre that they would not rent the space unless the roof leaks were fixed and Pierre provided documentation showing that repairs had been made.  They testified that Pierre assured them that he would fix the leaks and provide a report on the condition of the roof.  Pierre testified that he told Tilley and Delgado that the roof was watertight and that he did not say he would make repairs to the roof.  But Evans, the property manager, made a note after the meeting stating that “we . . . need to fix a roof leak.”
(footnote: 2) 

On August 12, Delgado sent Pierre a fax stating that Horton wanted to rent the space.  That same day, Pierre sent a proposed lease to Delgado with a letter stating that he would not be able to make any repairs until the lease was signed.  Delgado initialed the lease, and Tilley signed it.

The lease’s term was twelve months.  It recites August 12, 2003, as the date of execution, August 19 as the date of commencement, and a monthly rental fee of $680.  The lease contains “as-is” and “entire agreement” clauses. On August 20, Evans delivered a key to the space to Delgado, and Delgado gave him the executed lease. 

Sometime before August 19, Pierre called Tilley and told her that he needed more time to ready the space.  Tilley told him he could have one more week.  

On August 25, Tilley called Evans and stated she was unhappy with the condition of the space.  Evans testified that Tilley complained about several issues such as the space’s cleanliness, a hole in the door, and some remaining stained ceiling tiles but said nothing about the roof leaking.  Tilley testified that she and Delgado decided they could not use Pierre’s space without some assurance that the roof did not leak.  She said that she could not give Pierre more time to prepare the premises because she needed storage space immediately.  Later on August 25, she rented another storage space from a different lessor for $700 per month. 

Pierre sued Appellees for breach of contract.  Appellees asserted common law and statutory fraud as affirmative defenses and counterclaims.  The case was tried to a jury.  For reasons not reflected in the record, Pierre’s breach of contract claim was not submitted to the jury.  The jury found in Appellees’ favor on their common law and statutory fraud counterclaims and awarded them $240 in damages and $15,000 in attorney’s fees through trial plus additional attorney’s fees on appeal.  The trial court signed a judgment that Pierre take nothing by his claims and that Appellees recover the amounts awarded by the jury. 

Discussion

Legal and factual sufficiency

Eighteen of Pierre’s twenty-one issues challenge the legal and factual sufficiency of the evidence to support the jury’s fraud findings.  Specifically, Pierre argues that the evidence is legally and factually insufficient to prove (1) that he had no intention of having a roofer inspect the roof, (2) that he had no intention of doing the work on the space that he agreed to do, (3) that the roof was leaking in August 2003, or (4) that Appellees suffered $240 in damages.

Standards of review

(comment: 1)A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
“No Evidence”
 
and “Insufficient Evidence” Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 827
 (Tex. 2005).  Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cont’l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996); 
Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).

(comment: 2)An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

Elements of fraud

To establish common law fraud, a plaintiff must prove (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the defendant made the representation with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury.  
Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.
, 962 S.W.2d 507, 524 (Tex. 1998).  The elements of statutory fraud are the same as common law fraud, except that in the case of statutory fraud, it is not necessary to prove that the speaker acted with knowledge or recklessness. 
Brush v. Reata Oil & Gas Corp
., 984 S.W.2d 720, 726 (Tex. App.—Waco 1998, pet. denied); 
see
 
Tex. Bus. & Com. Code Ann
. § 27.01 (Vernon 2002).  Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony.  
Spoljaric v. Percival Tours, Inc
., 708 S.W.2d 432, 434 (Tex. 1986).  Since intent to defraud is not susceptible of direct proof, it invariably must be proven by circumstantial evidence.  
Id.
 at 435.

Application

Considering the evidence favorable to the jury’s fraud findings and disregarding evidence contrary to the findings that a reasonable factfinder could disregard, we hold that there is legally sufficient evidence on each of the elements of fraud to support the jury’s verdict.  
See City of Keller
, 168 S.W.3d at 827.  Pierre testified that he affirmatively told Tilley and Delgado that the water damage to the ceiling tiles had occurred many months before, the roof had already been fixed, and the space was watertight.  But Charles Fryberger, the prior tenant, testified that he vacated the premises because the roof had twenty-six leaks in February 2003, and Pierre admitted that he made no repairs to the subject premises after Fryberger vacated.  Moreover, Evans, the property manager, testified that the condition described by Tilley and Delgado—a puddle of water on the floor below stained ceiling tiles—was evidence of an ongoing leak in the space.  Thus, there is some that evidence that Pierre represented that the roof was watertight and some evidence that the roof was in fact leaking.

Tilley’s and Delgado’s testimony that they told Pierre they needed a dry space to store furniture is circumstantial evidence from which the jury could infer that Pierre told them the roof was watertight with the intent of inducing them to sign the lease.  Tilley testified that she relied on his representation.

With regard to damages, Tilley testified that because she needed storage space immediately, she leased space at another location for $20 per month more than the $680 per month Pierre charged for his space.  Pierre points out that the more expensive space was also larger—2,000 square feet versus the 1,200 square feet of Pierre’s space—and that Tilley testified the space was three-quarters full of Horton furniture at the time of trial.  Thus, argues Pierre, Appellees were not damaged because (1) they ended up leasing storage space at a lower cost per square foot and (2) by the time of trial in March 2006, they were storing 1,500 square feet of furniture and would have outgrown Pierre’s space anyway.  But even if the alternative storage space was less expensive on a per-foot basis, it was more expensive overall; and even if the evidence that the amount of space eventually used by Appellees exceeded the size of Pierre’s space were somehow relevant to damages, there is no evidence that Appellees would have outgrown Pierre’s space before the lease expired in August 2004.  Pierre also argues Appellees presented no evidence to show that if they had more time to shop, they would have been able to lease a suitable space for less than $700 per month.  But Texas recognizes benefit-of-the-bargain as a measure of damages for fraud.
  Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc.
, 960 S.W.2d 41, 49-50 (Tex. 1998).  Appellees bargained with Pierre for storage space for $680 per month; what they paid in excess of that sum is a legitimate measure of damages.

Thus, we hold that the evidence is legally sufficient to support the jury’s fraud findings.  Further, viewing all of the evidence, we hold that it is factually sufficient.  Because the evidence is legally and factually sufficient to support a finding of fraud based on Pierre’s representation that the roof did not leak, it is irrelevant whether the evidence is insufficient to show that he did not intend to inspect the roof or make repairs to the space, as Pierre specifically complains in eight of his issues, and we need not address those issues.  
See 
Tex. R. App. P.
 47.1.  
Therefore, we overrule Pierre’s issues five through eight, ten through thirteen, nineteen, and twenty, and we do not reach his issues one through four and fifteen through eighteen.

Existence of a binding lease

In his ninth and fourteenth issues, Pierre argues that Appellees could not assert a counterclaim for fraudulent inducement because the existence of a binding, enforceable lease is a prerequisite to such a counterclaim and Appellees took the position that there was no valid, binding lease.  Pierre relies on the following language from 
Haase v. Glazner
: “Without a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim.”  62 S.W.3d 795, 798 (Tex. 2001).  He also cites Appellees’ pleading where they alleged fraudulent inducement as a defense to Pierre’s breach of contract claim:  “[Pierre] fraudulently induced [Appellees] into signing the lease and is, therefore, barred from enforcing such agreement.” 

Pierre’s reliance on 
Haase
 is misplaced.  In that case, the alleged unwritten agreement between the parties was unenforceable under the statute of frauds because it was both a promise to answer for another’s debt and an agreement that could not be performed within one year.  
Id.
 at 797.  Thus, there was no binding agreement between the parties, and the plaintiff could not sue for fraudulent inducement.  
Id.
 at 798.  In our case, Appellees contend that the lease agreement is unenforceable because Pierre fraudulently induced them to sign it, not for some independent reason like the statute of frauds.  To apply the rule proposed by Pierre would impose an insoluble Catch-22 on litigants who, like Appellees, would challenge the validity of an agreement by way of fraudulent inducement.  We therefore overrule Appellant’s ninth and fourteenth issues.

Admission of Fryberger’s testimony

Pierre’s twenty-first issue states that the trial court erred by admitting the testimony of Charles Fryberger.  But Pierre wholly fails to address this issue in the argument section of his brief.  An issue on appeal unsupported by argument or citation to any legal authority presents nothing for the court to review.  
Strange v. Cont'l Cas. Co.
, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied), 
cert. denied
, 543 U.S. 1076 (2005).  Therefore, we overrule Pierre’s twenty-first issue for inadequate briefing.  
See 
Tex. R. App. P.
 
38.1(h)
.

Conclusion

Having overruled all of Pierre’s issues, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DELIVERED:  July 19, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4. 

2:
While the parties disagree about the condition of the roof and Pierre’s representations regarding it, they agree that he said he would fix other problems with the space, such as walling over a doorway to an adjacent space. 

COMMENTS AND ANNOTATIONS
Comment 1:
Standard ¶

Comment 2:
[Standard ¶]